**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 24-cv-80367-MIDDLEBROOKS

RAM ADVERTISING GROUP, LLC,
D/B/A THE RAM GROUP,

       Plaintiff,

v.

CARS.COM, INC.,

       Defendant.

_____/

## ORDER GRANTING MOTION TO TRANSFER VENUE

THIS CAUSE comes before the Court upon Defendant Cars.com, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint Under Rule 12(b)(3), or, in the Alternative, to Transfer Venue Under 28 U.S.C. § 1404(a), filed May 10, 2024. (DE 20). Plaintiff, Ram Advertising, LLC ("RAM"), filed a Response in Opposition on June 3, 2024. (DE 27). Defendant thereafter replied in support of its Motion on June 10, 2024. (DE 28). For the following reasons, I am going to grant Defendant's Motion and transfer this case.

## BACKGROUND

Plaintiff initiated this lawsuit on October 27, 2023, in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. (DE 1 ¶ 1). The state-court complaint alleges that Defendant, a Delaware corporation with its principal place of business in Chicago, Illinois, is a digital marketplace and solutions provider for the automotive industry. (DE 1-1 ¶ 3). Plaintiff is a consulting agency "that provides a data-driven approach to marketing to its clients, allowing them the ability to create successful campaigns in specific target areas." (*Id.* ¶ 8). The allegations state that Defendant launched FUEL, a digital solution focused on inefficiencies of advertising in the

U.S. auto market designed to help auto dealers pinpoint serious ready-to-buy shoppers, in 2020. (*Id.* ¶ 10). The complaint represented that the Chief Operations Officer of FUEL reached out to the Chief Operations Officer of Plaintiff, and both Parties agreed that they would collaborate: Plaintiff would sell FUEL's digital services to new customers as well as the Plaintiff's own customers. (*Id.* ¶¶ 11–12). "Thereafter, for a period of approximately six months, RAM . . . sold FUEL's digital services without formally memorializing their agreement in writing." (*Id.* ¶ 13).

On August 28, 2020, the Parties signed a mutual nondisclosure agreement whereby the Parties agreed to not disclose "confidential information," which was broadly defined to include "information not known to the public, whether of a technical, business or other nature that relates to the Business Purpose . . . ." (*Id.* ¶ 17). Then, on February 11, 2021, the Parties memorialized their agreement for Plaintiff to sell FUEL's digital services. (*Id.* ¶ 18; *Id.* at pp. 16–19). The Parties acted in accordance with the contract for a period of two years. (*Id.* ¶ 19, ¶¶ 25–26).

In October of 2022, there was a disagreement between Plaintiff and Defendant concerning the restructuring of Defendant's business model. (*Id.* ¶ 20). Defendant apparently wanted to "do away with the agency model whereby Defendant engaged the services of third parties (such as RAM) to sell its services, to having Defendant directly sell its services to the automotive industry." (*Id.*). Defendant then terminated the contract and began directly competing with Plaintiff. (*Id.* ¶ 22). Plaintiff alleges that Defendant subsequently engaged in a "defamatory campaign designed precisely to deter and prevent as many clients as possible from doing business with RAM." (*Id.* ¶ 23). Plaintiff alleges that Defendant contacted its customers and attempted to convince them to terminate their relationship with Plaintiff, although the full extent and scope of such statements and the audience "are not yet known to RAM." (*Id.* ¶¶ 25–26).

The state-court complaint asserted three counts against Defendant: slander per se, tortious interference with a business relationship, and temporary and permanent injunctive relief. After Defendant was served with a copy of the summons and complaint, it removed the case on March 26, 2024, invoking the Court's diversity jurisdiction. (DE 1). Immediately thereafter, Defendant moved to dismiss the Complaint under Rule 12(b)(3), or, in the alternative, to transfer the case to the Northern District of Illinois. (DE 4).

Plaintiff responded to the Motion by filing an Amended Complaint on April 26, 2024. (DE 16). The Amended Complaint removes any reference to the Nondisclosure Agreement and the Referral Agreement that the Parties executed on February 11, 2021. (*See generally id.*). It also adds a claim for "open account," where Plaintiff asserts that Defendant owes Plaintiff "more than $230,000.00 that is due with interest . . . for services rendered by Plaintiff for the benefit of Defendant." *(*DE 16 ¶ 67). Defendant has once again filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(3), or, alternatively, to transfer this case, arguing that this case has been brought in the improper venue. (DE 20).

Defendant argues within the current Motion that Plaintiff has removed references to the nondisclosure agreement and contract in an attempt to skirt the Parties' negotiated-for, mandatory forum-selection clause. According to Defendant, pursuant to the Parties' agreement, this case belongs in either the Northern District of Illinois or state court in Cook County, Illinois. The crux of Plaintiff's Response is that the Court should not consider this mandatory forum selection clause because the contents of the Parties' agreement do not appear within the four corners of Plaintiff's Amended Complaint. For the following reasons, I will grant Defendant's Motion.

3

**LEGAL STANDARD**

Whether I find this action appropriate to dismiss under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) or alternatively to transfer under 28 U.S.C. § 1404(a) turns on whether the Southern District of Florida is the proper venue for this matter. Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Federal Rule of Civil Procedure 12(b)(3) states that a party may move to dismiss a case for "improper venue." Thus, these provisions only allow for dismissal when venue is "wrong" or "improper." In contrast, 28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

The Supreme Court has held that 18 U.S.C. § 1391 governs whether a venue is "wrong" or "improper." *See Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.,* 571 U.S. 49, 62–63 (2013). That provision states, in relevant part, that a civil action may be brought in: "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." § 1391(a). Because section 1391 delineates precisely what type of venue is correct for the purpose of filing a lawsuit, the Supreme Court held in *Atlantic Marine* that that "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." *Id.* So long as the statutory definition is met, venue is technically proper.

However, while a forum selection clause might not render a venue technically "wrong" and thus might not become an appropriate basis to dismiss under 28 U.S.C. § 1406(a) or Rule

4

12(b)(3), the clause might make the case worthy of transfer under § 1404(a). That provision states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404. The statutory provision exclusively "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Const. Co., Inc.*, 571 U.S. at 59. Otherwise, for those forum selection clauses that point "to a state or foreign forum," the appropriate way to enforce such provisions is dismissing the case "through the doctrine of *forum non conveniens.*" *Id.* at 60.

Ordinarily, upon a motion to dismiss based on improper venue under Federal Rule of Civil Procedure 12(b)(3), a district court would "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Const. Co., Inc.,* 571 U.S. at 62–63. "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum.'" *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 31 (1988)).

Therefore, when presented with a motion to dismiss and/or transfer based on a forum selection clause in the parties' contract, a district court engages in traditional contract interpretation. *See Slater v. Energy Services Group Intern., Inc.,* 634 F.3d 1326, 1330 (11th Cir. 2011). This means that "the plain meaning of a contract's language governs its interpretation." *Id.* The Eleventh Circuit describes the plain language of most forum selection clauses as either "permissive" or "mandatory" *See id.* "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. A mandatory clause, in contrast, 'dictates an

exclusive forum for litigation under the contract.'" *Glob. Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999)).[1]

Of particular relevance here is that unlike a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "the Court may consider materials outside the pleadings without converting a Rule 12(b)(3) motion to dismiss to a motion for summary judgment." *Liles v. Ginn-La W. End, Ltd.*, 631 F.3d 1242, 1244 n.5 (11th Cir. 2011); *see also Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir. 1996) ("Analysis under Rule 12(b)(3), on the other hand, permits the district court to consider facts outside of the pleadings, and is consistent with the Supreme Court standard for resolving forum selection clause cases."). This means that Plaintiff's argument—namely, that I cannot consider the forum selection clause within the Parties' Referral Fee Agreement or Nondisclosure Agreement because it is neither referenced within the Amended Complaint nor central to Plaintiff's claims—is erroneous. Even though Plaintiff did not attach those agreements to its Amended Complaint, I can consider them as part of a 12(b)(3) analysis. As always, however, if matters outside of the pleadings create a disputed act, then the district court must draw all reasonable inferences in favor of the Plaintiff. *See Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988).

## DISCUSSION

Plaintiff maintains that a substantial part of the events constituting Defendant's wrongdoing occurred in the Southern District of Florida. *See* (DE 16 ¶ 3). As this comes before me on a Motion to Dismiss, I will accept these allegations as true and find that the Southern District

---

[1] I also note that "[t]he removal of an action from state to federal court does not waive any Rule 12(b) defenses, including seeking a Rule 12(b)(3) dismissal based on a forum-selection clause." *Kostelac v. Allianz Glob. Corp. & Specialty AG*, 517 Fed. Appx. 670, 675 (11th Cir. 2013).

of Florida is technically a "correct" venue under § 1391(b). Such a conclusion would mean that

dismissal under § 1406(b) is improper.

   The next inquiry would be whether the Parties' agreed-upon contract would mandate that

I nonetheless consider the Southern District of Florida an unsuitable venue pursuant to the forum-

selection clause. The forum-selection clause at issue in this matter appears in the Parties' Referral

Fee Agreement, and it posits:

> This Agreement will be governed by the laws of the State of Illinois
> without giving effect to its rules for conflicts of laws, and *the parties*
> *hereby irrevocably consent to the exclusive personal jurisdiction* of
> the state and federal courts *sitting in Cook County, Illinois for all*
> *matters in any way relating to or arising under this Agreement.*

(DE 21-1 at 3 ¶ 9) (emphasis added). This language is mandatory: it requires that "*all matters in*

*any way"* that simply *relate* to the agreement be *exclusively* litigated in state and federal courts in

Cook County, Illinois.

   Accordingly, because "[f]orum selection clauses are presumptively valid and enforceable,"

I will enforce this clause "unless the plaintiff makes a 'strong showing' that enforcement would

be unfair or unreasonable under the circumstances." *Feggestad v. Kerzner Int'l Bahamas Ltd.*, 843

F.3d 915, 918 (11th Cir. 2016) (quoting *Krenkel v. Krezner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281

(11th Cir. 2009)). This "strong showing" would require Plaintiff demonstrate that "(1) its

formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of his day in

court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a

remedy; or (4) enforcement of the clause would contravene public policy." *Feggestad*, 843 F.3d

at 918 (quoting *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998)).

   But Plaintiff makes no such showing favoring invalidating this clause. Instead, Plaintiff

argues that the Nondisclosure Agreement is signed by Steven Gall—someone who is not a Party

to this lawsuit—and that the Nondisclosure Agreement contains a mere choice-of-law provision, not a binding forum selection clause. I agree with Plaintiff's argument that the Nondisclosure Agreement contains a choice-of-law clause that might not be so broad as to constitute a forum-selection clause. (*See* DE 21-2 ¶ 16). However, Plaintiff's argument misses the mark: Defendant uses the *Referral Fee Agreement* between the Parties to support dismissal of this action, not just the Nondisclosure Agreement.

The Referral Fee Agreement states that it is between the Ram Group, Plaintiff, and Cars.com, Defendant. (DE 21-1 at 2). The Agreement contemplates that Defendant will engage Plaintiff "to act as a non-exclusive finder for [Defendant] with respect to sales of the Product to Customers . . . . [Plaintiff] shall introduce [Defendant] to Customers and perform such other related responsibilities as directed by [Defendant], including forwarding sales literature and samples." (*Id.* ¶ 1). Accordingly, so long as Plaintiff's claims relate to the services for which it was engaged, then it is bound by its own agreement to litigate these disputes in Cook County, Illinois.

Plaintiff's claims certainly relate to the Parties' business relationship and the services for which it was retained. Count IV of Plaintiff's Amended Complaint asserts that Plaintiff is entitled to damages for unpaid interest arising from services rendered by Plaintiff for Defendant. Plaintiff even attaches invoices in support of its damages claim, reflecting charges for various referral fees. (DE 16-2). Thus, I find that this matter "relates" to the Referral Fee Agreement, which, under Eleventh Circuit precedent, is a broad standard. *See Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987), aff'd and remanded, 487 U.S. 22, 32 (1988) (interpreting forum selection clause language requiring the Parties to litigate any "case or controversy arising under or in connection with this Agreement" as including "all causes of action arising directly or indirectly from the business relationship evidenced by the contract").

Further, although Plaintiff argues that Defendant did not sign the Referral Agreement, the Parties performed under the Contract for two years according to Plaintiff's own pleadings. *See* (DE 16 ¶¶ 11, 12, 15). Under either Illinois or Florida law, that is sufficient to find an enforceable contract. *See Integrated Health Services of Green Briar, Inc. v. Lopez-Silvero,* 827 So. 2d 338, 339 (Fla. Dist. Ct. App. 2002) ("A contract is binding, despite the fact that one party did not sign the contract, where both parties have performed under the contract."); *Landmark Properties, Inc. v. Architects Int'l-Chicago*, 172 Ill. App. 3d 379, 383 (1988) ("It is well settled that a party named in a contract may, by his acts and conduct, indicate his assent to its terms and become bound by its provisions even though he has not signed it."). As a result, the Parties are bound by their own bargain to conduct such litigation in either the federal or state court sitting in Cook County, Illinois, and I will grant the Defendant's Motion to either dismiss or transfer Plaintiff's Complaint.

I note, however, that the forum selection clause at issue here neither requires nor limits the litigation to the *federal* court within Cook County, Illinois. The question would therefore be whether I could transfer this to the Northern District of Illinois even though the Parties contemplated that litigation could be brought within the state court of Cook County, Illinois.

In *Hisey v. Qualtek USA, LLC,* 753 Fed.Appx. 698, 704 (11th Cir. 2018), the Eleventh Circuit considered, in an unpublished opinion, whether the district court abused its discretion when dismissing a case pursuant to the doctrine of *forum non conveniens* in light of a forum selection clause similar to the one at issue here. The forum-selection clause in *Hisey* called for jurisdiction to resolve disputes related to the parties' contract "solely in Pennsylvania." *Id.* at 700. The Eleventh Circuit held that the district court was within its discretion, and within the confines of the Supreme Court's *Atlantic Marine* decision, when it dismissed the case on the grounds of *forum non conveniens*. *Id.* at 704. Because the forum selection clause in *Hisey* did not *require* the dispute to

9

be litigated in a non-federal forum, and because the contract did not "*limit[]* venue to a particular federal court," the Eleventh Circuit upheld the district court's decision to dismiss. *Id.* However, the panel also noted that "[n]one of the parties filed a motion to transfer or argued for transfer." *Id.*

I find this case sufficiently different from *Hisey* to comfortably transfer this case as opposed to dismissing it pursuant to *forum non conveniens* for a couple reasons. First, Defendant here has specifically argued for transfer of this case pursuant to § 1404. *See Atl. Marine*, 571 U.S. at 52 ("When a defendant files [a motion to transfer under § 1404(a)], we conclude, a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer."). Second, although the forum-selection clause here does not specifically name the Northern District of Illinois as an agreed-upon forum, the contract does state that the Parties consent to the federal court "sitting in Cook County, Illinois." (DE 21-1 at 2 ¶ 9). The only federal court that encompasses Cook County, Illinois, is the Northern District of Illinois. Therefore, the Parties did limit venue to a *particular* federal court even if they did not identify that court by name. *Compare Hisey*, 753 Fed.Appx. at 703. Accordingly, because the Parties consented to the exclusive jurisdiction of either the Northern District of Illinois or the state court sitting in Cook County, Illinois, I find the appropriate disposition of this case is to transfer it pursuant to 28 U.S.C. § 1404.

**CONCLUSION**

Based on the foregoing and after careful consideration of the Parties' written submissions, it is hereby **ORDERED AND ADJUDGED** that:

1.  Defendants' Motion to Dismiss Under Rule 12(b)(3), or, in the alternative, to Transfer Venue Under 28 U.S.C. § 1404(a) (DE 20) is **GRANTED** as to the request to transfer.

2. The Clerk of Court **SHALL TRANSFER** this case to the Northern District of Illinois.

3. The Clerk of Court **SHALL CLOSE** this case here, in the Southern District of Florida.

**SIGNED** in Chambers in West Palm Beach, Florida, this 12th day of August, 2024.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record