**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RAM ADVERTISING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24-CV-07132 |
| | ) | |
| CARS.COM, INC., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

When a business introduces a new product for sale, it typically proceeds in one of two ways: by selling directly to its customers or by entrusting a third party to do so. Defendant Cars.com selected the latter option when it contracted with plaintiff RAM Advertising to stimulate sales in South Florida. RAM alleges that Cars.com came to regret this decision for financial reasons and defied certain contract obligations. This suit followed.

RAM has brought this action against Cars.com, alleging claims for relief supported by theories of breach of contract, tortious interference with business expectancy, money had and received in assumpsit, and unjust enrichment. Cars.com moved to dismiss the amended complaint in its entirety for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the following reasons, the motion is denied.

**BACKGROUND**

In February 2020, Cars.com launched "FUEL," a digital advertising program offering automobile marketing videos to "ready to buy" car shoppers and dealerships. Cars.com retained RAM, an automotive marketing and consulting firm, to help promote its FUEL product. Cars.com and RAM executed two contracts during 2020, which form the basis of the amended complaint. In February of that year, the two companies entered into their first contract, a Referral Fee Agreement

(RFA). The RFA called for RAM to act as a "non-exclusive finder for [Cars.com] with respect to [FUEL] sales" to car dealerships. Am. Compl., Ex. A, ¶ 1. Stated in plain English, Cars.com offered car dealerships the right to advertise their automobiles via video on Cars.com, and RAM brokered some of these sales. When a dealership made one of these purchases, RAM earned a referral fee pursuant to the RFA. *Id.*

Several months after signing the RFA, employees from the two companies executed the second contract, a "Mutual Nondisclosure Agreement." As the word "mutual" suggests, the NDA protected both Cars.com and RAM from disclosure of confidential information without the other party's consent. The parties defined "Confidential Information" broadly, even protecting against either party disclosing the NDA's existence. Am. Compl., Ex. C., ¶ 1. These contracts governed the companies' relationship until Cars.com decided to terminate the RFA in June 2023. Am. Compl., ¶ 32.

RAM posits that at some point prior to terminating the RFA, Cars.com decided to sell its FUEL product directly to RAM's referral customers for greater financial gain. *Id.*, ¶¶ 36-37. RAM alleges that Cars.com's decision to promote FUEL directly rather than through RAM was wrongful in at least three ways. First, Cars.com stopped making referral payments "earned, due and owing" in a sum exceeding $250,000. *Id.*, ¶¶ 41-42. Second, Cars.com refused to pay certain referral fees until RAM paid Cars.com over $40,000 for outstanding balances of unrelated third-party customer accounts. *Id.*, ¶ 53. Third, Cars.com setoff—*i.e.*, withheld money from required payouts to RAM—over $230,000. RAM asserts that the setoff covered unrelated third-party customers with outstanding balances, not the customers for which RAM invoiced Cars.com. *Id.*, ¶ 55.

RAM also claims that Cars.com intentionally disclosed confidential information protected by the NDA to RAM's referral customers. *Id.*, ¶¶ 73-74. The disclosed information included

"RAM's pricing structure, its accounting procedures to calculate Referral Fees, and the [RFA] itself." *Id.*, ¶ 59. Several customers subsequently severed their business ties with RAM, which included terminating contracts for marketing and consulting services independent of the RFA. *Id.*, ¶¶ 93-108. One RAM referral client, Sansone Auto Group, sued RAM in Florida state court shortly after learning about the RFA and its related fees, claiming that it violated a separate contract. *Id.*, ¶ 79. In the case before this Court, Cars.com contends that RAM has failed to state a claim.

## DISCUSSION

RAM alleges that Cars.com breached both the RFA (Count I) and the NDA (Count II). Furthermore, RAM asserts that Cars.com tortiously interfered with business expectancy (Count III) and received money in assumpsit (Count IV). If an express contract does not exist, RAM pleads in the alternative that Cars.com was unjustly enriched (Count V). Cars.com moved to dismiss all five counts. At the pleading stage, a complaint need only contain a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), as well as "sufficient factual matter" to state a facially plausible basis for relief, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court must assume the truth of all well-pled allegations and draw all reasonable inferences in the plaintiff's favor, it should not accept a complaint's legal or conclusory statements as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### I. Contract Based Claims

RAM alleges two claims (but multiple theories) based on two contracts: one based on allegations that Cars.com wrongfully withheld payments owed to RAM under the RFA and the other on allegations that Cars.com wrongfully disclosed RAM's confidential business information protected by the NDA. Its principal theory as to each is that Cars.com breached its obligations under the contracts. A breach of contract claim under Illinois law requires: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the

defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019); *accord*, *Ivey v. Transunion Rental Screening Sols., Inc.*, 2022 IL 127903, ¶ 25, 465 Ill. 666, 215 N.E.3d 871, 877. In the alternative, RAM also asserts a claim for unjust enrichment.

**A. Breach of the RFA**

Cars.com argues that it had a contractual right to refuse payments to RAM, stating that "if Cars.com did not get paid by a customer [RAM] was not entitled to a Referral Fee." Mot. to Dismiss Mem. 3. To justify withholding payments, Cars.com points to the RFA's third paragraph, which asserts that "no Referral Fee will be paid unless the Customer is current on all payments" to Cars.com. Am. Compl., Ex. A, ¶ 3. In short, Cars.com states that no breach of contract occurred because Cars.com had a contractual right to refuse to pay the referral fees allegedly withheld.

The contractual right, however, does not capture RAM's specific allegations. RAM does not deny that ***some*** customers failed to make timely payments to Cars.com. Instead, RAM alleges that Cars.com refused to pay over $250,000 of referral fees for customers who remained ***current*** in their billing. Am. Compl., ¶¶ 39-43, 84(A). Cars.com attempts to refute the allegations by providing a declaration made by the company's chief commercial officer, Mot. to Dismiss, Attach. 1, but as noted above, in assessing a motion to dismiss for failure to state a claim, the Court must take the allegations of the complaint as true. If the Court considered the declaration, it would convert the current motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d); *Santana v. Cook Cnty. Bd. of Rev.*, 679 F.3d 614, 619 (7th Cir. 2012). "This Court cannot consider [non-complaint] material without converting the motion to a motion for summary judgment—something neither party has asked this Court to do." *Levey v. Concesionaria Vuela Compania de*

*Aviacion*, *S.A.P.I. de C.V.*, 529 F. Supp. 3d 856, 865 (N.D. Ill. 2021).[1] Disregarding the affidavit, what is left is $250,000 of unpaid invoices that RAM alleges it is owed under the RFA.

Cars.com raises other arguments, but they do not address the outstanding invoices. For example, even if the voluntary payment doctrine applied to the breach of contract claim as Cars.com insists, it fails to address the unfulfilled invoices because no payment has taken place. *See, e.g.*, *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 847 (1995) (requiring the plaintiff make a payment to assert the defense). And even if the RFA partially limits liability as Cars.com suggests, such a clause does not mean that RAM cannot state a claim. *Hung Infrastructure Ltd. v. Blockware Mining, Inc.*, No. 23-cv-16195, 2024 WL 3470581, at *3 (N.D. Ill. July 19, 2024) (plaintiff sufficiently alleged that damages were to be proven at trial despite potential contractual limitations on liability).[2]

At this juncture, RAM has sufficiently alleged a plausible claim for relief on its wrongful payment demands claim based on a breach of contract theory. And to the extent that any viable legal theory exists to support a claim, that entire claim will survive a motion to dismiss. *See Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012); *Croixland Props. Ltd. v. Corcoran*, 174 F.3d 213, 218 (D.C. Cir. 1999) ("[I]f one of the theories can survive a Rule 12(b)(6) motion, the district court cannot dismiss the complaint."); *Churchwick Partners, LLC v. Seal Keystone, LLC*, No. 22-cv-02251, 2023 WL 2973801, at *2 (S.D. Ind. Apr. 17, 2023) ("A Rule 12(b)(6) motion cannot be used to dismiss individual legal theories advanced in support of a claim, so long as at

[1] RAM also did not open the door for Cars.com to rely on the declaration. To consider any non-complaint materials at this stage, the complaint must refer to the non-complaint materials and be central to the claim. *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013).

[2] Cars.com seems to recognize this fact in its Reply Brief. Def.'s Reply Br. 6 ("The point Cars.com advanced in the MTD is that if [RAM] cannot establish a breach, then [RAM] is not entitled to damages.").

least one theory, implicit or explicit, remains."). Here, the claim that Cars.com wrongfully withheld $250,000 of referral fees owed to RAM based on its sales to customers who were current on their payments states a plausible claim under a breach of contract theory and sufficiently states a claim for relief.[3]

**B. Breach of the NDA**

Cars.com argues that RAM is not a party to the NDA and therefore cannot plead a breach of an enforceable contract. Mot. to Dismiss Mem. 6. According to Cars.com, the NDA exists between "Steven Gall and Cars.com" because "Mr. Gall's signature block does not specify that he was signing on behalf of [RAM]." *Id.* By similar logic, one might conclude that the NDA is between Mr. Gall and Chris Marshall. Am. Compl., Ex. C. Mr. Marshall's signature block lists his title as "Head of Data Solutions" without mentioning Cars.com whereas Mr. Gall's block reads "VP" without listing RAM. *Id.* Cars.com makes a stronger argument by pointing out that the parties listed in the NDA's opening paragraph include only Cars.com and the "Company," which defines Mr. Gall as said company. Cars.com also cites *Bogie v. Rosenberg*, which holds in relevant part "when an exhibit incontrovertibly contradicts the allegations in the amended complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." 705 F.3d 603, 609 (7th Cir. 2013).

That may be so, but the NDA does not incontrovertibly contradict this amended complaint. Cars.com would have the Court believe that Mr. Gall operates as a one-man company, holding

[3] The parties contest whether Cars.com may have breached the implied covenant of good faith and fair dealing. Mot. to Dismiss Mem. 5; Pl.'s Resp. Br. 3. A potential breach of this implied covenant is nothing more than a different legal theory alleging a breach of contract claim based on the same set of facts. *McCleary v. Wells Fargo Sec., LLC*, 2015 IL App (1st) 141287, ¶ 19, 29 N.E.3d 1087, 1093 (providing background on the breach of this implied covenant under Illinois law). The Court does not weigh in today on this theory because it does not need to.

himself out to business partners as only the vice president of his own creation. That would be odd, particularly as there are no facts alleged in the amended complaint that would justify concluding that Mr. Gall had an independent relationship with Cars.com outside of his role at RAM. Pl.'s Resp. Br. 9. A court should favor reasonable, commonsense readings over strained, literal ones. *BKCAP, LLC v. CAPTEC Franchise Tr. 2000-1*, 572 F.3d 353, 360 (7th Cir. 2009), *as amended* (Aug. 5, 2009). Accordingly, the Court does not agree with Cars.com because adopting a literal construction of the NDA would lead to irrational results. The more sensible reading holds that Mr. Gall signed the NDA on behalf of RAM as its vice president.

Cars.com advances a host of other arguments based on specific NDA details, but none of them prove fatal. Cars.com states that "one would expect that if the NDA was intended to govern the parties' relationship, it would have been executed concurrently with the [RFA]." Mot. to Dismiss Mem. 7. Indeed, the parties executed the NDA nearly seven months after entering the RFA. Yet the amended complaint alleges that the referral relationship lasted until June 2023. Am. Compl., ¶ 32. It follows that the NDA, even if executed months after the RFA, still provided contract protection during the RFA's remaining 34 months. Am. Compl., ¶¶ 11, 32; Am. Compl., Ex. C. Cars.com also notes that the NDA and RFA never explicitly reference each other, Mot. to Dismiss Mem. 7, but this does not mean that the NDA does not contemplate the RFA. The NDA's "Business Purpose" includes information the parties "may disclose or [have] disclosed" as to "certain Confidential Information in connection with a potential or existing business transaction." Am. Compl., Ex. C. Although rather vague, the Court reasonably infers that "an existing business transaction" covers the previously executed RFA. *Iqbal*, 556 U.S. at 678. The NDA appears to make use of a standardized template with boilerplate language, so the Court forgives the lack of a

specific reference. As to the RFA, it might not mention the NDA simply because the parties decided to enter into the confidentiality agreement after executing the RFA.

Cars.com also argues that the disclosure claim should be dismissed based on the confidentiality clause found in the RFA, as Cars.com asserts that the disclosed information was its own. Mot. to Dismiss Mem. 7-8. This argument also falls flat. The NDA includes an integration clause, which clearly states that the NDA "constitutes the entire agreement between the Parties relating to the non-disclosure obligations." Am. Compl., Ex. C, ¶ 13. *See also West Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co., Inc.,* 794 F.3d 666, 679-80 (7th Cir. 2015) ("the whole purpose of an integration clause is to declare that there are no previous or contemporaneous agreements not contained in the written contract."). And, even if the RFA's confidentiality provision applied to this dispute, it would require an expansive reading of the contract to find that RAM's pricing and accounting practices belong to Cars.com. Am. Compl., ¶ 59.

When all is said and done, the amended complaint still details a scheme in which Cars.com intentionally disclosed protected information to RAM's referral clients without consent. Am. Compl., ¶ 74. The Court reasonably infers that Mr. Gall's signature bound RAM to the NDA and that the NDA's details pose no dispositive issue. Assuming the truth of the amended complaint's allegations, RAM may proceed.

## II. Tortious Interference with Business Expectancy

RAM also asserts that its disclosure allegations state a viable claim for relief under a theory of interference with business expectancy.[4] As a threshold matter, however, the court need not

[4] In the amended complaint, RAM entitled Count III as "Tortious Interference with Contract." Am. Compl., ¶ 91. Cars.com asserted that RAM could not sufficiently state such a claim, Mot. to Dismiss Mem. 8, to which RAM agreed. Pl.'s Resp. Br. 10. RAM claims that it mislabeled Count III which should have read "tortious interference with business expectancy." Pl.'s Resp. Br. 11. The mislabeled count provides no obstacle for the amended complaint. The

address the viability of that theory since, as already determined above, the disclosure claim is a plausible claim for relief under a breach of contract theory. Nevertheless, in the interests of completeness, the court addresses the business expectancy tort theory.

Cars.com postulates that RAM fails to state a plausible claim under an interference with business expectancy theory. To prove a claim based on that theory, a plaintiff must show that (1) RAM had a "valid business relationship or a reasonable expectation of entering into a valid business relationship;" (2) Cars.com had "knowledge of that relationship or expectancy;" (3) Cars.com "intentionally interfered, inducing or causing a breach or termination of the relationship or expectancy;" and (4) RAM suffered damages as a result. *Timken Gears & Servs., Inc. v. Brad Foote Gear Works, Inc.*, 738 F. Supp. 3d 1018, 1022 (N.D. Ill. 2024). Cars.com limits its aim to the third requirement, arguing that RAM cannot allege "intentional and improper" interference by relying on *Timken*. Def.'s Reply Br. 8. In that case, Judge Bucklo held that boilerplate, conclusory tortious interference allegations "lack[ed] the kind of substance needed to suggest plausibly that [the defendant] committed any impropriety." *Timken Gears & Servs., Inc.*, 738 F. Supp. at 1023. RAM's amended complaint does the opposite. By stating that Cars.com breached the NDA to lure referral customers into directly contracting with the company, the amended complaint plausibly alleges that Cars.com intentionally interfered with RAM's customer relationships. Am. Compl., ¶ 72.

---

Federal Rules only require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead legal theories or causes of action, so no penalty attaches to the inclusion of legal theories that are not viable. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992) (reasoning that "a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations" instead of demanding the plaintiff identify the proper rule of law); *Rabe v. United Airlines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error.").

A lack of impropriety poses no issue, either. Illinois has never formally adopted the Restatement of Torts, but its courts have cited it approvingly. *See Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 485, 693 N.E.2d 358, 371 (1998) (citing the Restatement of Torts approvingly regarding purposeful interference); *Grako v. Bill Walsh Chevrolet-Cadillac, Inc.*, 2023 IL App (3d) 220324, ¶ 36, 229 N.E.3d 869, 877 ("While [the Illinois] supreme court has not formally adopted the Restatement, it continues to serve as helpful persuasive authority in tortious interference evaluation."). To determine whether a defendant's conduct is improper, the comments instruct that "established customs and practices regarding disapproved actions or methods [of interference] may also be significant in evaluating the nature of the actor's conduct." Restatement (Second) of Torts § 767 cmt. c (1979). Breaching an NDA to undercut a counterparty fits this statement nicely: executing an NDA is a routine practice used to protect a company's interests.

Cars.com also posits that disclosing truthful information cannot be improper. Def.'s Reply Br. 8-9. Specifically, Cars.com quotes *Soderlund Bros., Inc. v. Carrier Corp.*, stating that "there is no liability for interference with a prospective contractual relation on the part of one who merely gives truthful information to another." 278 Ill. App. 3d 606, 620, 663 N.E.2d 1, 10 (1995). *Soderlund*, however, is distinguishable from the case at hand. Cars.com is alleged to have interfered with ***ongoing*** business relationships, not just prospective business. Am. Compl., ¶¶ 92-104. The amended complaint identifies at least four referral customers who terminated their relationship with RAM because of these disclosures. Am. Compl., ¶¶ 107-09. In this respect, the language Cars.com cites from *Soderlund* is inapposite. Furthermore, the alleged interference in *Soderlund* hinged on potentially false or misleading statements. 663 N.E.2d at 619. Neither party in the present case takes issue with the truthfulness of the disclosed information. By contrast, contract drafters design NDAs to protect truthful information. Finally, *Soderlund* did not consider

the propriety of violating an NDA, *Id.* at 611, making the duties owed by Cars.com to RAM factually distinct.

Once again, Cars.com has failed to demonstrate any shortcoming with RAM's amended complaint. RAM sufficiently alleges that Cars.com directly interfered with their known, ongoing business operations by disclosing NDA-protected information. RAM plausibly alleges a claim upon which relief can be granted based on a theory of interference with a business expectancy.

**III. Money Had and Received in Assumpsit**

RAM also asserts the doctrine of money had and received in assumpsit in support of its claim based on wrongful compensation demands premised on the RFA. Again, the court need not address the viability of that theory since, as already determined above, the claim based on wrongful payment demands is a plausible claim for relief under a breach of contract theory. Nevertheless, in the interests of completeness, the court addresses the assumpsit theory.

Under Illinois law, the doctrine of money had and received in assumpsit comprises three elements: that RAM (1) was compelled to pay money to Cars.com, (2) Cars.com had no legal right to demand the money, and (3) payment was necessary in order to avoid an injury to RAM's business or property. *RSA Props. Mission Hills, P.C. v. Mission Hills Homeowners Ass'n*, 2024 IL App (1st) 231526, ¶ 28, 264 N.E.3d 1041, 1049 (citation omitted). The amended complaint alleges that Cars.com forced RAM to pay over $43,000 of unrelated, outstanding customer balances to receive referral fees that RAM was already entitled to. Am. Compl., ¶¶ 53, 118-120. The amended complaint refers to any payment made by RAM as a business necessity because withheld referral payments could threaten their business operations.[5] *Id.*, ¶ 54.

[5] RAM also alleges that the setoffs of over $230,000 (as opposed to the $43,000 in payments) could support a claim. *Id.*, ¶ 55.

Cars.com effectively admits that dismissal depends on the voluntary payment doctrine, Mot. to Dismiss Mem. 11, which explains why their motion fails. The voluntary payment doctrine is an affirmative defense. *Wermers Floorcovering, Inc. v. Santanna Nat. Gas Corp.*, 342 Ill. App. 3d 222, 224, 794 N.E.2d 1012, 1014 (2003); *accord Louisiana Firefighters' Ret. Sys. v. N. Tr. Invs., N.A.*, No. 09-cv-7203, 2015 WL 1281493, at *5 n.3 (N.D. Ill. Mar. 17, 2015). "Orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Applied here, RAM did not need to anticipate Cars.com raising the voluntary payment doctrine as an affirmative defense. The parties spilled a considerable amount of ink arguing whether business coercion might suffice as an exception to the doctrine. Pl.'s Resp. Br. 6-7; Def.'s Reply Br. 5. Because of the procedural posture, the Court does not render judgment on that issue today, and Cars.com remains free to raise the doctrine at a later stage. At present, however, the doctrine has no bearing on RAM's ability to state a claim.

## IV. Unjust Enrichment

RAM's final count attempts to support a claim for unjust enrichment in the alternative. Am. Compl., ¶¶ 126-133. As Cars.com observes, "[i]n Illinois recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). The Federal Rules expressly permit pleading inconsistent claims, however. Fed. R. Civ. P. 8(d)(2). It is therefore permissible to plead a claim for breach of contract as well as a claim for unjust enrichment. *Cohen*, 735 F.3d at 615. The Seventh Circuit has explained how a plaintiff can thread this needle: "A plaintiff may plead as follows: (1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is *not* an express contract, then the defendant is liable for unjustly

enriching himself at my expense." *Id.* What a plaintiff cannot do, however, is allege unjust enrichment despite the existence of an express contract: a plaintiff cannot claim that the defendant "is liable for breaching this express contract but that if it did not breach the contract, then it owes damages for unjust[ly] enriching itself." *Id.* In other words, an alternative claim supported by the theory of unjust enrichment cannot simultaneously allege an express contract.

That is not what RAM is doing. Its unjust enrichment claim does not allege that a contract exists and that Cars.com was unjustly enriched by breaching that contract (as was the case in *Cohen*). Rather, RAM's unjust enrichment claim is expressly conditioned on the ***absence*** of any contract. See R. 49 at ¶ 127 ("If for any reason it is found that ***no valid or enforceable written contract governs*** the business relationship between RAM and Cars.com") (emphasis added). That approach is entirely consistent with the pleading formula approved by the Seventh Circuit: "(1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is *not* an express contract, then the defendant is liable for unjustly enriching himself at my expense." Accordingly, RAM's alternative claim of unjust enrichment also survives the motion to dismiss.

* * *

For the reasons set forth above, defendant Cars.com's motion to dismiss [58] is denied. The motion for protective order and limited stay of discovery [68] is denied as moot.

Dated: September 28, 2026

John J. Tharp, Jr.
United States District Judge